**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| CARL SINGLETON § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-07-1325 |
| § | |
| UNITED STATES OF AMERICA, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

This is a personal injury suit arising from a pedestrian-vehicle collision. The plaintiff, Carl Singleton, seeks to recover damages resulting when he was struck by a United States Postal Service vehicle. Singleton alleges that the USPS driver's negligence caused the collision. The United States has moved for summary judgment, arguing that the undisputed facts show that the USPS driver was not negligent when she drove in the proper lane at a slow rate of speed and that Singleton caused his own injury by walking in the road with his back to oncoming traffic and failing to keep a proper lookout. Singleton responds that there are material fact issues precluding summary judgment.

Based on a careful review of the pleadings; the motion, response, and reply; the record; and the applicable law, this court grants the government's motion for summary judgment and enters final judgment by separate order. The reasons for this ruling are explained in detail below.

**I.     Background**

On April 30, 2005, Singleton was taking part in a trail ride. The ride included approximately 20 to 25 people on horseback and 3 others, including Singleton, riding in a mule-driven wagon. Singleton had participated in hundreds of similar trail rides and owned the wagon. The ride's organizers, Singleton's friends, asked him to bring his wagon and participate in the ride. Singleton was riding in the wagon rather than driving on that day.

The trail ride began around 10:30 a.m. A "point scout" led the procession on horseback, carrying a flag to signal the group's presence on the roadway. Behind the point scout rode a couple individuals called "hazers." Singleton's wagon was next. The rest of the group rode horseback behind Singleton's wagon, with a pick-up truck bringing up the rear.

The ride took place on Moorehead Road in Montgomery County. Moorehead Road is a paved two-way rural road with no center dividing stripe. There is a dirt-and-grass shoulder with mailboxes and residences lining both sides of the road.

At approximately 2:00 p.m., the trail ride was proceeding south on Moorehead, taking up a large part of the paved road. The group was traveling at approximately two to three miles per hour. During the ride, the group periodically made way for vehicles to pass. Some of the vehicles heading north passed the group by driving half on the road and half on the shoulder.

Jennifer Cantu, a Conroe Post Office employee, was driving north on Moorehead Road in a USPS Long Lasting Vehicle ("LLV"), delivering mail to the boxes on the right side of the road. An LLV is designed to allow the driver to operate the vehicle on what is

usually the passenger side, to make it easier to deliver the mail.

At his deposition, Singleton drew a diagram showing the position of Cantu's vehicle as it approached the trail riders. (Docket Entry No. 22, Ex. B, Deposition of Carl Singleton, Ex. 1). Cantu's vehicle was partially off the road, with the right-side wheels on the shoulder. Cantu proceeded north, starting and stopping as she put mail into the mailboxes along Moorehead Road. Singleton saw the vehicle stopped at a mailbox, facing north as the trail riders continued south. (*Id.* at 19:11-17).

Some of the horseback riders behind the wagon were children. From his position on the wagon, Singleton heard some of the children having difficulty and decided to help by calming their horses. Singleton was seated on a low-mounted board on the wagon's left side, between the wheels. He stepped off the wagon into the center of the road. At his deposition, Singleton testified that he stepped off the wagon into the roadway, rather than on the side closest to the shoulder, because this was a shorter way to get to the children. (*Id.* at 18:13-18, 19:5-10). Had he exited the wagon on the shoulder side, Singleton would have had to pass through other horses to reach the children. Singleton testified that this could have caused a disturbance among the horses. (*Id.* at 19:1-4). Singleton testified that he exited onto the roadway rather than the shoulder because there was no traffic at the time. (*Id.* at 18:17-21).

After stepping off the wagon, Singleton walked in the roadway toward his right, going around the horses that were just behind the wagon. The diagram Singleton drew at his deposition showed some of these horses to the left of the wagon in the northbound lane of travel. (*Id.*, Ex. 1). As he walked in the road around these horses, Singleton faced the rear

of the trail-ride group with his back to the USPS vehicle. Singleton was not sure whether the USPS vehicle was stopped or moving when he stepped off the wagon. (*Id.* at 19:24-20:1).

Singleton had taken approximately four steps into the roadway, walking around the horses and toward the edge of the paved roadway on his right, when the bumper of the USPS vehicle hit him. The collision broke his right leg and caused him to fall into the vehicle's left-side mirror.

Texas Department of Public Safety Officer Travis Wooten investigated and prepared a report. Officer Wooten did not cite Cantu. The report stated, in relevant part:

> Unit 1 [USPS vehicle] heading north on Moorehead Road. Unit 2 [Singleton] exited the trail ride wagon. Unit 2 stumbled backwards and lost his balance. Unit 2 fell back into Unit 1 as it traveled north. Unit 1 struck Unit 2 with its left passenger [mirror]

(Docket Entry No. 22, Ex. C). Under the heading "contributing factors and conditions," Wooten's report only lists Singleton's act: "[STUMBLED] INTO ROADWAY." (*Id.*). In the affidavit dated August 27, 2008, submitted in response to the government's summary judgment motion, Singleton denies stumbling, losing his balance, or falling. (Docket Entry No. 24, Singleton Affidavit). He asserts that he had no problem exiting the low-mounted board on the side of the wagon bed, that he was stable, and that he took several steps with a normal gait before the vehicle struck him. (*Id.*).

The summary judgment record consists of a photograph of Moorehead Road taken on

4

April 30, 2005 near the accident site[1]; Singleton's deposition of July 16, 2008[2], the Texas Peace Officer's Accident Report[3]; a photograph of the USPS vehicle taken after the accident[4]; and Singleton's affidavit dated August 27, 2008.[5]

**II.     The Applicable Law**

   **A.     Summary Judgment**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "'An

---

[1] (Docket Entry No. 22, Ex. A).

[2] (*Id.*, Ex. B).

[3] (*Id.*, Ex. C).

[4] (*Id.*, Ex. D).

[5] (Docket Entry No. 24).

5

issue is material if its resolution could affect the outcome of the action.'" *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a 'scintilla' of evidence.'" *Little*, 37 F.3d at 1075 (internal citations omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

### B. The Federal Tort Claims Act and the Negligence Claim

Under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, the United States is liable for the negligence of its employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA is the

exclusive remedy for tort claims against the United States or its agencies.  Under the FTCA, no action may be brought against the United States unless the claimant first presents the claim to the appropriate federal agency.  28 U.S.C. § 2675(a).  Singleton met the FTCA's administrative exhaustion requirement.  He filed his claim with the USPS, which denied it on October 20, 2006, and filed this suit within six months of the denial.  (Docket Entry No. 1, filed April 19, 2007).

In a FTCA case, the law of the state where the alleged act or omission occurred governs.  *Transco Leasing Corp. v. United States*, 896 F.2d 1435, 1450 (5th Cir. 1990).  Texas law applies.  The elements of a negligence cause of action under Texas law are "the existence of a duty, a breach of that duty, and damages proximately caused by the breach." *West Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).  The duty is to act as a reasonably prudent person under the same or similar circumstances, considering the reasonably foreseeable risk of injury to another.  *Chambers v. United States*, 656 F.Supp. 1447, 1455 (S.D. Tex. 1987).  Proximate cause consists of both cause-in-fact and foreseeability.  *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992).  Cause-in-fact is established when the act or omission was a substantial factor in bringing about the injury without which the harm would not have occurred.  *West Invs., Inc.*, 162 S.W.3d at 551. Although "Texas courts routinely hold that proximate causation is a fact question within the jury's province,"  *Berry Prop. Mgmt. v. Bliskey*, 850 S.W.2d 644, 656 (Tex.App.–Corpus Christi 1993, writ dism'd by agr.), proximate cause can become a question of law "if the circumstances are such that . . . reasonable minds could not arrive at different conclusions."

*Mo. Pac. R.R. Co. v. Am. Statesman*, 552 S.W.2d 99, 104-05 (Tex.1977).

Under Texas law, a plaintiff's contributory or comparative negligence bars recovery if he is 50 percent responsible. If the plaintiff is less than 50 percent responsible, that diminishes but does not preclude recovery. *Perez v. United States*, 830 F.2d 54, 57 (5th Cir. 1987).

**III.     Analysis**

The United States argues that there is no evidence that Cantu was negligent because the undisputed facts in the record show that she acted with reasonable care by driving slowly in the proper lane, in which she had the right-of-way. According to the United States, the accident would not have happened had Singleton not walked into the road, directly into the oncoming traffic lane, with his back to any oncoming traffic. The United States argues that Singleton was at least 51% at fault for the accident and is precluded from recovering. Singleton argues that the record raises fact issues concerning Cantu's negligence.

In response to the government's summary judgment motion, Singleton notes that all traffic heading north on Moorehead Road at 2:00 p.m. encountered the "point scout" whose flag alerted drivers of the group's presence on the road ahead. Singleton argues that when Cantu saw the point scout and the riders, she should have stopped and stayed in one place until the all trail riders had passed. (Docket Entry No. 24, Singleton Affidavit at ¶ 24) ("If the postal vehicle had remained stopped where I had seen it stopped before I exited the wagon, there would not have been any contact with me.").

It is undisputed that Cantu encountered the point scout and saw the trail riders on the

8

road.  It is also undisputed that Cantu continued driving slowly on the right hand side of the road to place mail into the mailboxes on that side of the road.  But these facts do not support an inference of negligence on Cantu's part.  The record does not support an inference that reasonable care required Cantu to stop and remain stopped until the trail-ride group had passed.

Other northbound vehicles had passed the trail-ride group earlier that day.  Some of those vehicles had driven partly on the paved road and partly on the dirt shoulder.  Singleton testified that he saw Cantu's postal delivery vehicle partly on the road and partly on the shoulder.  Singleton did not recall if the vehicle was moving or stopped when he stepped off the wagon onto the road.  (Docket Entry No. 22, Deposition of Carl Singleton at 19:24-20:1, 21:19-24).

In his August 27, 2008 affidavit, Singleton claimed that he was "present and walking on the roadway for a long enough period of time for a vehicle driver to have seen [him] and avoided contact with [him]."  (Docket Entry No. 24, Singleton Affidavit at ¶ 27).  There is no evidence in the record to support this assertion.  This affidavit statement is inconsistent with Singleton's earlier deposition testimony that he was not looking at the USPS vehicle when he left the wagon and that he kept his back to the vehicle.  Singleton did not know whether the USPS vehicle was stopped or moving when he exited the wagon and began walking toward the back of the group of horseback riders.  (Docket Entry No. 22, Deposition of Carl Singleton at 19:24-20:1, 21:19-24).  Because Singleton was not looking at the USPS vehicle when he exited the wagon and because he kept his back to the vehicle, he could not know whether the

9

driver could see him long enough to avoid hitting him. Singleton's unsubstantiated assertion is insufficient to raise a fact issue that would defeat summary judgment.

Singleton also stated in his affidavit that if Cantu "had kept the wheels 'half on/half off' the paved portion of the roadway . . . there would not have been any contact with me." (Docket Entry No. 24, Singleton Affidavit at ¶ 26). Singleton testified at his deposition that he saw the vehicle half-on and half-off the paved road before he stepped off the wagon. Singleton did not see the USPS vehicle after he got off the wagon onto the road and began walking north, to the rear of the group of horseback riders, with his back to the USPS vehicle.

It is undisputed that the USPS vehicle did not cross into the left or southbound lane of travel. Instead, the vehicle was either fully in the northbound lane of the paved road or partly in that lane and partly on the shoulder when the collision occurred. Singleton's testimony and diagram at his deposition show that the USPS vehicle was driving partially in the northbound paved lane and partially on the shoulder as it crossed paths with the group, as other vehicles had done earlier that day.

Under Texas law, when a vehicle is traveling at a proper speed within its lane of travel and a pedestrian suddenly enters the vehicle's path leaving insufficient time to take evasive action, the driver is not negligent as a matter of law. *Green v. Pool*, 421 S.W.2d 439, 441-42 (Tex. Civ. App.–Tyler 1967, no writ). Under Texas law, pedestrians are prohibited from walking in the center of roadway. *See* TEX. TRANSP. CODE. ANN. § 552.006(b). Section 552.006(b) of the Texas Transportation Code provides that "[i]f a sidewalk is not provided, a pedestrian walking along and on a highway shall if possible walk on: (1) the left side of the

highway; or (2) the shoulder of the highway facing oncoming traffic." *Id.* Pedestrians are under a duty to maintain a proper lookout for their own safety, whether or not the pedestrian has the right-of-way. *Lane v. Dallas Transit Co.*, 331 S.W.2d 821, 823 (Tex. Civ. App.–Amarillo 1959, writ ref'd n.r.e.).

In *Smith v. State Farm Ins. Co.*, 431 S.W.2d 775 (Tex. Civ. App.–Beaumont 1968, writ ref'd n.r.e.), the defendant was driving 15 m.p.h. on a paved roadway with no center stripe when a pedestrian ran into the car's right front fender. The court denied the pedestrian recovery because he failed to yield the right-of-way to the vehicle, in violation of TEX. CIV. REV. STAT. ANN. art. 670(d), § 78(a), and was not walking on the left side of the roadway or on the shoulder facing traffic, in violation of TEX. CIV. REV. STAT. ANN. art. 670(d), § 81. *Id.* at 778-79. In *Gonzalez v. Perry*, 390 S.W.2d 382 (Tex. Civ. App.–San Antonio 1965, writ ref'd n.r.e.), a pedestrian-plaintiff was negligent for jogging in the center of the roadway and refusing to move over in response to a driver's honk. *Id.* at 384-85. The driver hit the jogger from behind in trying to pass. The court found that the driver was not negligent as a matter of law. *Id.*

The United States argues that the undisputed facts show that under Texas law, Cantu was not negligent and that Singleton's negligence was at least a 51% cause of the collision. Although Singleton testified that when he exited the wagon "there wasn't any traffic," he also testified that as the trail riders traveled south, he saw the postal vehicle on the northbound side of the road, delivering mail on that side of the road. (Docket Entry No. 22, Ex. B, Deposition of Carl Singleton at 19:18-23). The undisputed facts show that Singleton failed to keep a

proper lookout. He got out of the wagon in the center of the roadway, rather than on the side closest to the shoulder, without continuing to look to see if there were any vehicles approaching. He began walking in the roadway keeping his back to any oncoming traffic. The postal vehicle hit Singleton as it traveled north, in the northbound lane, where it had the right-of-way. The undisputed facts show that, as a matter of law, Singleton failed to comply with Section 552.006(b) of the Texas Transportation Code. The undisputed facts show that, as a matter of law, the postal service driver was not negligent and Singleton was.

## IV.     Conclusion

Singleton has failed to point to any evidence that the USPS driver was negligent. The record shows that Singleton failed to keep a proper lookout, failed to yield the right-of-way, and crossed into the path of the USPS vehicle. This court grants the government's motion for summary judgment dismissing this case. Final judgment is entered by separate order.

SIGNED on October 8, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge